## Case No. 323.

### Ex parte AMES.

### In re McKAY et al.

[1 Lowell, 561;[1] 7 N. B. R. 230.]

District Court, D. Massachusetts. April, 1871.

BANKRUPTCY—PREFERENCES—CHATTEL MORTGAGE —FUTURE ADVANCES—SECURITY.

1. An insolvent trader may mortgage his stock and tools for present and future advances with the actual and honest intent to raise money to continue his business. It seems, that such a mortgage would not necessarily be fraudulent though a part of the consideration were an existing debt.

2. Where the honest intent was clear, and the mortgage was made for past as well as future advances, but mainly for the latter, and it appeared that the past advances were already secured upon property reasonably believed to be fully adequate, the mortgage was upheld although it turned out that the former security had not been quite sufficient.

3. A chattel mortgage of machinery and other things which would be trade fixtures as between landlord and tenant, will give the mortgagee a valid lien as against the assignee in bankruptcy, although as against a prior mortgagee of the realty the fixtures would be real estate, if it appears that such prior mortgagee makes no claim to the fixtures.

4. Where a mortgage was given to indemnify the mortgagee for his advances, and he lent his acceptances to the mortgagor, and after the bankruptcy of the latter bought up the paper at a discount, held, that he could charge against the mortgaged property only what he had paid in cash to take up the acceptances.

5. Where a mortgage is made in Massachusetts of an unfinished locomotive, the mortgagee will hold the additions afterwards made to the article by the mortgagor before his bankruptcy, by accretion; but a mere mortgage of materials would not, it seems, give him the right to new articles manufactured from those materials.

6. A mortgage given in pursuance of a parol agreement to give security, if required, will not hold against the assignee in bankruptcy, if the act of giving the mortgage would have been a preference at the time it was given, but for the agreement.

[Cited in Strain v. Gourdin. Case No. 13,521.]

7. Whether or not a written promise to convey certain definite property as security, given when the debt was contracted, would save the mortgage afterwards given from being a preference, quaere?

[Cited in Re Jackson Iron Manuf'g Co., Case No. 7,153.]

8. Advances made in good faith while a mortgage is being prepared, and as part of the money agreed to be secured by it, will be protected, though there should be a change of the debtor's circumstances after the money was advanced, and before the deed was delivered.

[Cited in Lloyd v. Strobridge. Case No. 8,435; In re Jackson Iron Manuf'g Co., Id. 7,153. Distinguished in Smith v. Craft, 17 Fed. 706.]

In Bankruptcy.

B. F. Thomas and J. D. Ball, for petitioner.

T. K. Lothrop, for assignees.

[1][Reported by Hon. John Lowell LL. D., District Judge, and here reprinted by permission.]

LOWELL, District Judge. The petitioner, as trustee for himself and his partner holds a mortgage upon nearly all the stock, tools, and other movable property of the bankrupts, and it was to be expected that the general creditors should look upon the transaction with suspicion, and inquire carefully into its consideration. The advances were all made after the nineteenth of September; the mortgage was made on the seventeenth of October, and McKay & Aldus stopped payment in the latter part of November of the same year, 1868. A mortgage of all the property of a trader, or of so much as will make him insolvent, when given for a preexisting debt is, by the law of England, conclusively presumed to be a fraud upon the bankrupt act: Worseley v. Demattos, 1 Burrows, 467; Dutton v. Morrison, 17 Ves. 199; Lindon v. Sharp, 6 Man. & G. 895; Stewart v. Moody, 1 Cromp. M. & R. 777; and although our law does not deal in conclusive presumptions, yet the result is much the same, for it would be almost impossible to explain away such an apparent preference. It is not so with security given for present or future advances, which if made in good faith and without notice of any fraudulent intent on the part of the trader, cannot be acts of bankruptcy, for the reason that a fair exchange of equivalents injures no one. Unless, therefore, the mortgagee is party or privy to some fraud or preference, as in the case of Ex parte Mendell, (Re Butler,) [Case No. 9,418,] he may hold his security against the assignee however insolvent the mortgagor may have been at the time: Hutton v. Cruttwell, 1 El. & Bl. 15; Bittlestone v. Cooke, 6 El. & Bl. 296; Harris v. Rickett, 4 Hurl. & N. 1. In cases of a mixed character, where security for a past debt is coupled with a further advance, the law of England is thus stated by the latest text writer: "It does not appear to be formally settled whether the assignment by a debtor of the whole of his effects, in consideration partly of an existing debt and partly of an advance, is or is not an act of bankruptcy." After citing the authorities on both sides, he adds: "The weight of authority would seem to be in favor of a transaction of this sort not being an act of bankruptcy where the advance is made bona fide to enable the debtor to meet his engagements and carry on his business. Such an act may be and in fact often is the wisest course a trader can take to promote the interest of his creditors." Rob. Bankr. 110, citing In re Colemere, 1 Ch. App. 128; Allen v. Bonnett, 21 Law T. (N. S.) 578.

I am inclined to think that the test proposed by Mr. Robson is the true one under our law. It is not every insolvent who can be made bankrupt by his creditors, though every insolvent can petition in his own behalf. Congress has carefully refrained from saying that a state of insolvency is equivalent to an act of bankruptcy, though hopeless insolvency as proved by certain tests is so. For instance, a trader whose paper lies over for fourteen days has become bankrupt; but if his credit is sufficient to enable him to obtain a renewal within thirteen days, he cannot be proceeded against as a bankrupt on that ground. The question being in each case whether there was an intent to prefer, there may be many in which the evidence of a real and honest intention not to stop payment may make valid a security which was partly given for money previously advanced, if coupled with sufficient present advantages to the debtor to relieve the case of any fraudulent appearance. And there may even be cases where the purpose and expectation to keep on are so manifest that no intent to prefer can be found, though the insolvency was well known to both parties. The present case, however, is not one which calls for any critical examination into the boundary lines of the domain of preference. The history of the dealings between these parties from the 19th of September onward fails to show any intended fraud on the act. Indeed I understand it to be admitted that there was no such intent at first; but the assignees think they can discover a point where good faith ends and preference begins. They argue that the lenders advanced more money than they had intended or more than they had security for, and when they found this out determined to take the mortgage at any risk, to cover their advances and secure themselves if possible. The evidence lends no aid to this theory, but sets out a continuing course of dealing in which loans and security were contemporaneous throughout. I find it to be fully established that the firm of McKay & Aldus hoped and intended to continue their business, and made the mortgage with that view, and that their representations to the petitioner were calculated to make him believe not only that such was their hope, but that it was one that might be reasonably entertained. A mortgage made under such circumstances and for such a purpose cannot be successfully assailed if it is given for present and future advances only. It is argued, however, very strongly that this mortgage was intended mainly for past loans. No doubt it reads so on its face; but the proof is that many of the acceptances recited in it, although some of them are dated back a few days, so that all should not fall due at once, were given on the credit of this mortgage, and were not in fact delivered until the security itself was delivered. Our law of preference sets aside all payments and conveyances made with intent to prefer one creditor over the rest, whatever motives may have been brought to bear on the debtor by threat, entreaty, or legal coercion. And with us it is perhaps not the law, as it is in England, that a general promise of security given at the time the debt is con-

tracted, may be executed after the debtor has become insolvent. Such a promise will not save the act from being a preference, if it would have been one without the promise. This, I have more than once ruled to the jury, and there are reported cases for it: Arnold v. Maynard, [Case No. 561;] Graham v. Stark, [Id. 5.676;] Blodgett v. Hildreth, 11 Cush. 311. I have been accustomed to say that such an agreement merely amounts to an agreement to give a preference if one should become necessary. But I have always ruled that security fairly given, as part of the same transaction as the loan, could not be invalidated by a change of the borrower's situation re infecta, as if the money were advanced while the mortgage was in course of preparation, and the debtor fails in the mean time. I have not seen or known of any case which brings up the somewhat nicer question, argued here, whether specific and definite security, unconditionally stipulated for in writing, may be given after a lapse of time and a change of circumstances. This may depend on whether the contract is one that a court of law or equity would enforce in invitum; for I apprehend and have often decided subject to a correction that has not yet been made, that the assignee stands no better than the bankrupt in all matters of title, excepting where there is actual or constructive fraud. The petitioner insists that the letter of McKay & Aldus to him, of 21 September, if acted on and if the money was advanced on the faith of it, would give him an equitable lien which would prevail against the assignee. I shall not examine the point of law, because the facts negative any illegal intent, so that I must uphold the mortgage whether it was a mere continuation of the written promise or was a new contract. The petitioner advanced money from time to time and took security for each advance, and when the mortgage was ordered and was being drawn up, he had what appeared to be ample security for his then existing advances. It has turned out that one piece of property which he then held is of much less value than was supposed, and one other of somewhat less value, but there was no reason to suspect this at the time, and the difference even now is but trifling compared with the whole amount at issue, and I cannot find as a fact that this mortgage was given with any intent to prefer, or with any fear that the existing advances were not amply secured. The conduct of both parties before and after and at the time show as. clearly as does all the rest of the evidence that the mortgage was intended for a legitimate business transaction, having relation to the continuance and not the stopping of the trade, and that the advances made at and after the time were the sole moving consideration for the mortgage. Under these circumstances I do not feel justified in avoiding the mortgage even to the extent of the few thousand

dollars that are said not to have been already fully secured of the advances made in September. I do not undertake to recapitulate evidence, but I may say here that considering the dates. I doubt whether there is even a small balance of the earlier advances left to be paid out of the property embraced in the mortgage; because I think it will be found that acceptances for at least four or five thousand dollars were advanced while the mortgage was in preparation, and these would be protected by it if such was the agreement of the parties when they were given.

The mortgage being valid, it becomes a question of importance to the parties to decide what property is lawfully conveyed by it. It purports to grant "all the lathes, planers, drills, shafting, belting, pulleys, steam engines, boilers, and all the other machinery, tools, implements, furniture, locomotives, and other machinery and machines, whether finished, &c., and all the iron, steel, and other materials," on or about the land and buildings of the mortgagors' works at East Boston. There was an earlier mortgage on the land held by the Lowell Institution for Savings, to secure the payment of $60,000. The assignees maintained and still maintain that many of the things claimed by the petitioner under his conveyance were in fact a part of the realty, and held by the savings bank. They sold the equity of redemption of the real estate, after due notice, and after making a written agreement with the petitioner that the sale should not prejudice his rights, but that the disputed fixtures should be considered as worth their appraised value so far as the present controversy is concerned. The equity brought a large sum over the incumbrance of the savings bank. It is not seriously questioned by either party that certain steam engines, boilers, belting, and shafting, at least, are of the character of trade fixtures, which if put in by a tenant for years or at will, might be removed by him during his term: Wall v. Hinds, 4 Gray, 270; Whiting v. Brastow, 4 Pick. 310; Gaffield v. Hapgood, 17 Pick. 192. And it is no less certain that as against the savings bank, holding a prior mortgage of the land, they became a part of the realty, which neither the mortgagors nor any one claiming under them could remove: Winslow v. Merchants' Ins. Co., 4 Metc. [Mass.] 306; Butler v. Page, 7 Metc. [Mass.] 40; Bliss v. Whitney, 9 Allen, 114; Lynde v. Rowe, 12 Allen, 100; Richardson v. Copeland, 6 Gray, 536. The petitioner contends, and I think with reason, that the assignees having received for the equity of redemption a sum equal to the value of these fixtures must be considered to have received it for the fixtures clear of the mortgage. This distinguishes the case from Richardson v. Copeland, where the mortgagees of the realty applied to the insolvent court to have the estate sold, and for leave to prove for any deficiency, so that the defendant in that

case derived title under the mortgagees, and is so treated throughout the case. Here the first mortgagee has no interest in the controversy; the assignees do not hold under him, and cannot set up his title. The rights of these parties are the same as if the estate had been sold free of all incumbrances, and the first mortgagee had been paid off, and a surplus was remaining in the registry of the court to be paid to such persons as could make a title. The late case of Hunt v. Bay State Iron Co., 97 Mass. 279, decides that by an agreement between the vendors of iron rails and a railway company, the rails may remain the chattels of the vendor, after they are affixed to the realty; that the vendor's property in them cannot be asserted against prior incumbrancers, nor against subsequent bona fide incumbrancers or purchasers without notice, but will hold good against purchasers with notice. That case seems to me decisive of this, because an assignee in bankruptcy takes with notice: Mitchell v. Winslow, [Case No. 9,673;] Winsor v. McLellan, [Id. 17,887;] Mitford v. Mitford, 9 Ves. 87; In re Atkinson, 2 De Gex, M. & G. 140; In re Barr's Trusts, 4 Kay & J. 219.

It is argued on behalf of the assignees that a contract to treat fixtures as chattels, whether it be express or implied, must be made before they are actually affixed to the realty; and for this some remarks of Dewey, J., delivering the opinion of the court in Gibbs v. Estey, 15 Gray, 587, are quoted. But those remarks appear to be intended only for parol agreements concerning buildings and fixtures annexed by a stranger, and to mean that such a parol agreement or license cannot change real into personal estate after its character has been once established. So if the question here were between the petitioner and the savings bank, no mere oral license of the latter, given after the engines were set up, could be shown. Growing wood or crops may be sold by parol, with a parol license to sever them; and I am much inclined to think that trade fixtures might be. At all events there can be no doubt that the owner can in writing and for a valuable consideration convey severable chattels in such a way as to bind himself and his assignee in bankruptcy by estoppel at least. The discussions of the question whether fixtures have passed by a deed or mortgage all assume, and many of them express that if the owner chooses to except the fixtures out of his conveyance of the fee, he may lawfully do so. Two or three decisions in England, which are thought to state the law too strongly against mortgagees, are yet supported on the ground that the particular conveyances may be construed as including or excluding the fixtures as the case may be. See Waterfall v. Penistone, 6 El. & Bl. 876; Trappes v. Harter, 2 Cromp. & M. 153; Cullwick v. Swindell, L. R. 3 Eq. 249; Colegrave v. Dias Santos, 2 Barn. & C. 76; Harlan v. Harlan, 20 Pa. St. 303. So in Richardson v. Copeland, 6 Gray, 538, the chief justice says: "No title to these articles passed to the mortgagees which they could assert against a third party," referring, no doubt, to a prior incumbrancer or an innocent purchaser of the land, as in Hunt v. Bay State Iron Co., and as the defendant in the case then before the court seems to have been in effect. The assignee is not a third party, in this sense.

By the insolvent law of Massachusetts the assignee took whatever any creditor might have taken on execution against the insolvent, and this included some things which do not pass to an assignee in bankruptcy, such as real estate which had been attached as the property of the bankrupt and afterwards sold by him subject to the incumbrance.

I am of opinion that the conveyance to the petitioner, under these circumstances, no question arising between him and the earlier mortgagee of the realty, passed a title which is good against the assignees. Some of the articles mentioned in the argument do not appear to be described in the petitioner's mortgage, and do not pass. Such are the gas, steam, air, and water pipes, and the benches and closets, unless they are tools, implements, or machinery, and it hardly seems to me that they are either of these. I do not understand that it is important to settle each particular of this kind, because the money realized is sufficient to pay the mortgage debt in full if the principal fixtures are held to be included.

I agree with the assignees that any saving that the petitioner has made by buying up his own acceptances must be credited to the estate, because the mortgage was for indemnity only, and not for a sum certain; and if he could have got rid of the acceptances without payment there would have been a right to redeem on repayment of the cash advances. If any locomotives were in course of manufacture when the mortgage was given, the additions to them would pass by accretion up to the time of the bankruptcy, even if the materials were not included in the mortgage, which I suppose most of them were. But I apprehend that a mere mortgage of materials would not convey new articles made out of those materials. See Harding v. Coburn, 12 Metc. [Mass.] 333. Let a decree be drawn in conformity with this opinion.